# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GOLDMAN, SACHS & CO.,
SCOTT T. SHEFFER, and
ERIC W. GETTLEMAN                  : NO. 13-MC-130

    Applicants

  vs.

ATHENA VENTURE PARTNERS, L.P.

    Respondent

## MEMORANDUM AND ORDER

**JOYNER, J.**                                                                             August 1, 2013

This miscellaneous matter is presently before the Court for resolution of the parties' cross-motions to (1) confirm and (2) vacate/remand an arbitration award entered on March 13, 2013 by a FINRA[1] arbitration panel. For the reasons articulated below, the Applicants' motion to confirm shall be denied and Respondent's motion to vacate and remand granted.

## History of the Case

The genesis of the underlying dispute in this matter is Respondent, Athena Venture Partners, L.P.'s decision to invest in Goldman Sachs' Liquidity Partners 2007, L.P. Fund in August, 2007. According to Athena's Statement of Claim filed on August

---

[1] "FINRA" is an acronym for the Financial Industry Regulation Authority, (previously known as the NASD or National Association of Securities Dealers). It is, according to its website, "the largest independent regulator of securities firms doing business with the public in the United States." (See generally, www.finra.org)

12, 2009 with FINRA, in the summer of 2007 Goldman Sachs, acting through Scott Sheffer and Eric Gettleman, solicited its investment in a new Goldman Fund – Liquidity Partners 2007, purportedly describing it as a "terrific, low principal risk, short term investment with potential higher yields than other available cash investments." (Statement of Claim, p. 1). Athena further averred that Goldman induced its investment in the fund by representing that it would purchase "a diverse portfolio of very safe, AAA-rated debt securities temporarily available at depressed prices due to market conditions and sell those securities at a profit after market prices returned to normal." (Statement of Claim, p. 2). In reliance upon these representations, Athena invested $5 million in the Liquidity Partners 2007 Fund, but in fact, the Fund was "never managed as the safe 'buy and hold,' fixed-income fund it was represented to be," but was instead heavily leveraged. As a result, after 15 months Athena had lost over $3 million of its original $5 million investment.

Not surprisingly, Goldman, Sheller and Gettleman (the Applicants here) refute Athena's version of events. Rather, they assert that Respondent Athena was a sophisticated investor that was well-aware of the speculative nature of the fund's proposed investments, use of leverage, and risks of loss by virtue of its having received a Private Placement Memorandum which explained

2

all of these facts in advance of its investment in the fund. Thus, Applicants denied making any fraudulent or reckless misrepresentations or non-disclosures and further denied any and all liability for the losses incurred.

A three-member panel of arbitrators heard evidence in Philadelphia on November 2-4, 2011 and October 8-12 and 15, 2012. The written arbitration decision was issued on March 13, 2013 finding Athena's allegations to be false and/or clearly erroneous, denying the claim in its entirety and recommending the expungement of all references to the arbitration/claim from Mr. Sheffer's registration records with the Central Registration Depository ("CRD"). (Arbitration Award, p. 3). The Award, however, was signed only by two of the three arbitrators - it was not signed by the third, Demetrio S. Timban, Jr. On May 9, 2013, the Goldman parties filed the Application for Order Confirming Arbitration Award which is now before us. In addition to filing a response opposing confirmation, Respondent Athena filed, on June 7, 2013, its Motion to Vacate and Remand Arbitration Award which is likewise now pending.

## **Discussion**

It has been recognized that "[a] prime objective of an agreement to arbitrate is to achieve 'streamlined proceedings and expeditious results.'" Preston v. Ferrer, 552 U.S. 346, 357-358, 128 S. Ct. 978, 986, 169 L. Ed. 2d 917 (2008)(quoting Mitsubishi

3

Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 633, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)). Because there previously existed a "longstanding judicial hostility to arbitration agreements," Congress enacted the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16," "[t]o overcome judicial resistance to arbitration." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443, 126 S. Ct. 1204, 1207, 163 L. Ed. 2d 1038 (2006); Green Tree Financial Corporation - Alabama v. Randolph, 531 U.S. 79, 89, 121 S. Ct. 513, 521, 148 L. Ed. 2d 373, 382 (2000). See also, Nitro-Lift Technologies, L.L.C. v. Howard, ___U.S.___, 133 S. Ct. 500, 503, 184 L. Ed. 2d 328, 332(2012)([Federal Arbitration Act ... "declares a national policy favoring arbitration...")(citing Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984)). It is Section 2 of the Act which embodies the national policy favoring arbitration[2]. See, Buckeye, supra. By this provision, the FAA explicitly permits the use of arbitration and specifically authorizes individuals in commercial transactions to contract for arbitration. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir.

---

[2] Section 2 reads as follows:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration, an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

2003).

Once an agreement to arbitrate has been established, the FAA further provides a mechanism for ensuring that an award issued pursuant thereto may be enforced. In this regard, Section 9 of the Act decrees:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title [9 U.S.C. §§ 10, 11]. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a nonresident, then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court.

A deferential standard of review applies to the arbitration award itself. Sutter v. Oxford Health Plans, LLC, 675 F.3d 215, 219 (3d Cir. 2012); Metromedia Energy, Inc. v. Enserch Energy Services, Inc, 409 F.3d 574, 578 (3d Cir. 2005). Indeed, reviewing courts "do not entertain claims that an arbitrator has made factual or legal errors." Id. Instead, once a case has been arbitrated, a strong presumption attaches under the FAA that

5

the award should be enforced. <u>Brentwood Medical Associates v. United Mine Workers of America</u>, 396 F.3d 237, 241 (3d Cir. 2005).

As referenced in Section 9, while review must be deferential, this does not mean that an arbitral award can never be challenged. The FAA, however, provides only four grounds upon which arbitral awards may be vacated and the Supreme Court has declared those four grounds to be exclusive. <u>Hall Street Associates, LLC v. Mattel, Inc.</u>, 552 U.S. 576, 128 S. Ct. 1396, 1403, 170 L. Ed. 2d 254 (2008). Specifically, Section 10(a) states:

> (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration -
>
> > (1) where the award was procured by corruption, fraud, or undue means;
> >
> > (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> >
> > (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced; or
> >
> > (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

"In sum, when parties agree to resolve their disputes before an arbitrator without involving the courts, the courts will enforce the bargains implicit in such agreements by enforcing

6

arbitration awards absent a reason to doubt the authority or integrity of the arbitral forum. Sutter, supra. "An [arbitration] award is presumed valid unless it is affirmatively shown to be otherwise," and "[t]he party seeking to vacate the award bears the burden of proving that vacatur is appropriate." Popkave v. John Hancock Distributors, LLC, 768 F. Supp. 2d 785, 789 (E.D. Pa. 2011)(quoting, inter alia, Dluhos, 321 F.3d at 370 and Franko v. Ameriprise Fin. Servs., No. 09-09, 2009 U.S. Dist. LEXIS 48907 at *9 (E.D. Pa. June 11, 2009)). See also, Southco, Inc. v. Reele Precision Manufacturing Corp., No. 08-2915, 331 Fed. Appx. 925, 928, 2009 U.S. App. LEXIS 12762 at *8 (3d Cir. June 16, 2009)(same). The four grounds for vacatur delineated in Section 10(a) of the FAA are exclusive[3] and may not be supplemented by contract. Sutter, supra, (citing Hall Street Associates, 552 U.S. at 584). "Likewise, an arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award." Metromedia Energy, 409 F. 3d at 578 (quoting Major League Umpires Assoc. v. American League of Professional Baseball Clubs, 357

---

[3] It has also been stated that "[i]t is only when an arbitrator strays from interpretation and application of the agreement and effectively 'dispenses his own brand of industrial justice' that his decision may be unenforceable." Stolt-Nielsen S.A. v. Animal Feeds International, 559 U.S. 662, 130 S. Ct. 1758, 1767, 176 L. Ed. 2d 605, 615 (2010)(quoting MLB Players Ass'n v. Garvey, supra, and Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960)). "In that situation, an arbitration decision may be vacated under §10(a)(4) of the FAA on the ground that the arbitrator "exceeded his powers" for the task of an arbitrator is to interpret and enforce a contract, not to make public policy." Id.

F.3d 272, 279-280 (3d Cir. 2004) and Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509, 121 S. Ct. 1724, 149 L. Ed. 2d 740 (2001)).

Here, Respondent argues that "the Arbitration panel exceeded its powers by proceeding with the Arbitration hearing and rendering an Award notwithstanding the disqualifying conduct of one of the three arbitrators assigned by FINRA to participate in the arbitral process." (Respondent's Memorandum of Law in Support of Motion to Vacate and Remand Arbitration Award, at p. 2. [emphasis in original]). This means that the award was not authorized by the parties' agreement to arbitrate insofar as the agreement had provided that the panel was to be comprised of at least three arbitrators qualified under FINRA's rules, standards and code of conduct. (Respondent's Reply Brief in Support of Motion to Vacate, p. 1).

Pursuant to its investment in the Liquidity Partners 2007 Fund, Gary DiLella, Athena's Chief Financial Officer[4], executed a Subscription Agreement on August 14, 2007 relative to the investment, which provided as follows in relevant part:

**19. Binding Arbitration**

(a) Notwithstanding anything to the contrary in this Subscription Agreement or the Fund Agreement and except for

---

[4] Mr. DiLella described himself as Athena's Chief Financial Officer but acknowledged that he is "technically employed by" Provco Group, a management company that employs the employees who work in his office and which is Athena's General Partner. (Arbitration Transcript (hereafter "A.T.") 115-117, 122).

8

any claim or action which the Manager, the Fund or GS may elect (in their sole discretion) to commence as provided for in this Subscription Agreement and/or the Fund Agreement to determine or enforce any of its rights or your obligations under this Subscription Agreement or the Fund Agreement, you agree that all disputes arising out of or relating to (1) this Subscription Agreement, (2) your purchase, ownership or disposition of any Fund interests or (3) your rights or obligations under the Fund Agreement shall be resolved in accordance with the Binding Arbitration provisions of this Section 19.

(b) You acknowledge and agree that: (1) arbitration is final and binding on the parties; (2) the parties are waiving their right to seek remedies in court, including the right to jury trial except provisional remedies may be sought by GS; (3) pre-arbitration discovery is generally more limited than and different from court proceedings; (4) the arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited; and (5) the panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

(c) The arbitration will be conducted in Wilmington, Delaware before and in accordance with the rules then in effect of either the New York Stock Exchange, Inc., the NASD or, if GS and you agree, the American Arbitration Association. Any dispute or claim involving a dollar amount of $50,000 or less will be before one arbitrator, and all other disputes and claims will be before a panel of at least three arbitrators. The award of the arbitrator or a majority of the arbitrators, as the case may be, will be final, and judgment upon the award rendered may be entered in any court having jurisdiction. (emphasis supplied)

(See, Affidavit of David R. Moffitt in Support of Respondent's Motion to Vacate, ¶14, Tab 13, p. 22-23).

In conjunction with filing its claim, Athena also executed a "FINRA ARBITRATION Submission Agreement," paragraph 1 of which states that "[t]he undersigned parties ("parties") hereby submit the present matter in controversy, as set forth in the attached

9

statement of claim, answers, and all related cross claims, counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure."  (See, Affidavit of David R. Moffitt in Support of Respondent's Motion to Vacate, ¶4, Tab 3, p. 22).

FINRA Rule 12403 entitled "Cases with Three Arbitrators" likewise provides in pertinent part,

...

(6) Replacement of Arbitrators

> (A) If an arbitrator is removed, or becomes otherwise unable or unwilling to serve, the Director will appoint a replacement arbitrator in accordance with this rule, unless the parties agree in writing to proceed with only the remaining arbitrators.
>
> (B) The Director will appoint as a replacement arbitrator the arbitrator who is the most highly ranked available arbitrator of the required classification remaining on the combined list.
>
> (C) If there are no available arbitrators of the required classification on the consolidated list, the Director will appoint an arbitrator of the required classification to complete the panel from names generated by the Neutral List Selection System.  The Director will provide the parties information about the arbitrator as provided in Rule 12403(c)(2) and the parties shall have the right to object to the arbitrator as provided in Rule 12407.
>
> (D) If the Director must appoint a non-public arbitrator under Rule 12403(c)(6)(C), the Director may not appoint a non-public arbitrator as defined in Rule 12100(p)(2) or (3)[5], unless the parties agree

---

[5] FINRA Rule 12100 defines the relevant terms used throughout the rules.  Rule 12100(p) and (u) sets forth the definition for "non-public" and "public arbitrator" as follows:

10

The term "non-public arbitrator" means a person who is otherwise qualified to serve as an arbitrator and:

    (1) is, or within the past five years, was:

        (A) associated with, including registered through, a broker or a dealer (including a government securities broker or dealer or a municipal securities dealer);

        (B) registered under the Commodity Exchange Act;

        (C) a member of a commodities exchange or a registered futures association; or

        (D) associated with a person or firm registered under the Commodity Exchange Act;

    (2) is retired from, or spent a substantial part of a career engaging in, any of the business activities listed in paragraph (p)(1);

    (3) is an attorney, accountant, or other professional who has devoted 20 percent or more of his or her professional work, in the last two years, to clients who are engaged in any of the business activities listed in paragraph (p)(1); or

    (4) is an employee of a bank or other financial institution and effects transactions in securities, including government or municipal securities, and commodities futures or options or supervises or monitors the compliance with the securities and commodities laws of employees who engage in such activities.

For purposes of this rule, the term "professional work" shall not include mediation services performed by mediators who are also arbitrators, provided that the mediator acts in the capacity of a mediator and does not represent a party in the mediation.

The term "public arbitrator" means a person who is otherwise qualified to serve as an arbitrator and:

    (1) is not engaged in the conduct or activities described in paragraphs (p)(1) - (4);

    (2) was not engaged in the conduct or activities described in paragraphs (p)(1) - (4) for a total of 20 years or more;

    (3) is not an investment adviser, or associated with, including registered through, a mutual fund or hedge fund;

    (4) is not an attorney, accountant, or other professional whose firm derived 10 percent or more of its annual revenue in the past two years from any persons or entities listed in paragraphs (p)(1) - (4);

    (5) is not an attorney, accountant, or other professional whose firm derived $50,000 or more in annual revenue in the past two

otherwise.

FINRA Rule 12407(b) governs removal of arbitrators following the commencement of the proceedings:

> "After the first hearing session begins, the Director may remove an arbitrator based only on information required to be disclosed under Rule 12405 that was not

---

years from professional services rendered to any persons or entities listed in paragraph (p)(1) relating to any customer disputes concerning an investment account or transaction, including but not limited to, law firm fees, accounting firm fees, and consulting fees;

(6) is not employed by, and is not the spouse or an immediate family member of a person who is employed by, an entity that directly or indirectly controls, is controlled by, or is under common control with, any partnership, corporation, or other organization that is engaged in the securities business;

(7) is not a director or officer of, and is not the spouse or an immediate family member of a person who is a director or officer of, an entity that directly or indirectly controls, is controlled by, or is under common control with, any partnership, corporation, or other organization that is engaged in the securities business; and

(8) is not the spouse or an immediate family member of a person who is engaged in the conduct or activities described in paragraphs (p)(1) - (4). For purposes of this rule, the term immediate family member means:

(A) a person's parent, stepparent, child, or stepchild;

(B) a member of a person's household;

(C) an individual to whom a person provides financial support of more than 50 percent of his or her annual income; or

(D) a person who is claimed as a dependent for federal income tax purposes.

A person whom FINRA would not designate as a public arbitrator because of an affiliation under subparagraphs (3) - (7) shall not be designated as a public arbitrator for two calendar years after ending the affiliation.

For purposes of this rule, the term "revenue" shall not include mediation fees received by mediators who are also arbitrators, provided that the mediator acts in the capacity of a mediator and does not represent a party in the mediation.

12

> previously known by the parties. The Director may
> exercise this authority upon request of a party or on
> the Director's own initiative. Only the Director or
> the President of FINRA Dispute Resolution may exercise
> the Director's authority under this paragraph (b).

Rule 12405 delineates the disclosures required of arbitrators:

> (a) Before appointing arbitrators to a panel, the Director
> will notify the arbitrators of the nature of the dispute and
> the identity of the parties. Each potential arbitrator must
> make a reasonable effort to learn of, and must disclose to
> the Director, any circumstances which might preclude the
> arbitrator from rendering an objective and impartial
> determination in the proceeding, including:
>
>> (1) Any direct or indirect financial or personal
>> interest in the outcome of the arbitration;
>>
>> (2) Any existing or past financial, business,
>> professional, family, social, or other relationships or
>> circumstances with any party, any party's
>> representative, or anyone who the arbitrator is told
>> may be a witness in the proceeding, that are likely to
>> affect impartiality or might reasonably create an
>> appearance of partiality or bias;
>>
>> (3) Any such relationship or circumstances involving
>> members of the arbitrator's family or the arbitrator's
>> current employers, partners, or business associates;
>> and
>>
>> (4) Any existing or past service as a mediator for any
>> of the parties in the case for which the arbitrator has
>> been selected.
>
> (b) The obligation to disclose interests, relationships, or
> circumstances that might preclude an arbitrator from
> rendering an objective and impartial determination described
> in paragraph (a) is a continuing duty that requires an
> arbitrator who accepts appointment to an arbitration
> proceeding to disclose, at any stage of the proceeding, any
> such interests, relationships, or circumstances that arise,
> or are recalled or discovered.
>
> (c) The Director will inform the parties to the arbitration
> of any information disclosed to the Director under this rule
> unless the arbitrator who disclosed the information declines

appointment or voluntarily withdraws from the panel as soon as the arbitrator learns of any interest, relationship or circumstance that might preclude the arbitrator from rendering an objective and impartial determination in the proceeding, or the Director removes the arbitrator.

In addition, FINRA arbitrators are required to sign an oath affirming: (1) their duties to keep all matters relating to the arbitration proceeding(s) confidential, (2) that they have no relationship - familial, business or otherwise, with any of the parties to the arbitration(s) or their representatives, (3) that they have read and considered the FINRA Dispute Resolution's Temporary and Permanent Arbitrator Disqualification Criteria, and (4) that they are neither temporarily nor permanently disqualified from being a FINRA arbitrator. (<u>See</u>, Moffitt Affidavit, Tab 17). The Arbitrator Disclosure Checklist reads in relevant part as follows:

> The obligation to disclose interests, relationships, or circumstances that might preclude an arbitrator from rendering an objective and impartial determination is a continuing duty. The duty requires an arbitrator who accepts appointment to an arbitration proceeding to disclose, at any stage of the proceeding, any such interests, relationships, or circumstances that arise or are recalled or discovered.

The required disclosures themselves exceed 35 in number and include the following inquiries:

> 28. Has your alleged misconduct been an issue in any litigation, arbitration, criminal action, administrative proceedings, etc. (other than a proceeding in which you served as an arbitrator), even if you were not a named party to the proceeding?...
>
> 34. Have any of the licenses listed above or on your

> Disclosure Report lapsed (i.e., are not current)?
>
> 35. Has any professional entity or body with licensing authority cited you for malpractice; denied, suspended, barred or revoked your registration or license (e.g., insurance, real estate, securities, legal, medical, etc.); or restricted your activities in any way?

(Moffitt Affidavit, Tab 17, p. 8).

Among the Arbitrator Temporary Disqualification Criteria are "Pending Actions," which are more particularly described as arising where the "Arbitrator is the subject of or is a party to a pending investment-related civil action or arbitration claim initiated by a customer; or civil action or administrative complaint initiated by a regulatory body; ..." (Moffitt Affidavit, Tab 17, p. 10). Likewise, a "[f]inal, adverse disciplinary action by any domestic or foreign regulatory or governing professional body on a finding of, including but not limited to, false statement or omissions, material violation of investment-related regulation or the violation of a non-technical rule of such organizations or statute;" and "[f]elony conviction or plea of guilty or nolo contendere ("no contest") to a felony charge;" and "[f]inal adverse court decisions where there has been a finding of fraud" are all, inter alia, Permanent Arbitrator Disqualification Criteria. (Moffitt Affidavit, Tab 17, p. 11).

The record in this matter reflects that Respondent Athena filed its Statement of Claim with FINRA on or about August 12,

15

2009 and that it received notice of the arbitrators' assignment and disclosures on or about December 8, 2009. (Deal Declaration, Tab 1, p. 1; Moffitt Affidavit, Tab 18). Originally, the panel assigned to hear this case was composed of two public arbitrators both of whom were licensed attorneys - Kathleen K. Murphy, the Chairperson and George F. Adams, and one non-public arbitrator - Edward T. Borer, who was then the Chairman of a Registered Investment Advisor and a Registered Representative of a FINRA broker-dealer. (Moffitt Affidavit, Tab 18). Approximately one year later, FINRA notified the parties of Mr. Adams' withdrawal from the panel and of the identity of the replacement arbitrator, Demetrio Timban, who was also an attorney. (Moffitt Affidavit, Tab 19). The arbitration hearings commenced on November 2 - 4, 2011 and were continued on October 8 - 12 and 15, 2012. On March 22, 2012, Mr. Timban submitted an updated Disclosure Statement to FINRA in which he stated:

> "In September of 2011, I was served with a complaint from the State of New Jersey, Case #11-10-01215-I charging me with the unauthorized practice of law. The specific incident in question involved my representation of a family friend in a local municipal court in Evesham Township. While representing the family friend in the matter, I failed to make a motion for admission pro hac vice because while I am admitted in both Michigan and New York, I am not admitted in New Jersey. I take full responsibility for the oversight and I am working with the State to settle this and I am confident this matter will be expunged from my record. I have also informed the state bars of Michigan and New York. I am fully confident that this will in no way affect my ability to be fair and impartial in my duties to FINRA."

(Moffitt Affidavit, Tab 20). This disclosure was then provided

16

to the parties in this action on April 2, 2012.  (Deal Declaration, Tab 24).

There is no evidence that the Director of FINRA Dispute Resolution took any action to remove Mr. Timban as an arbitrator nor does it appear that either Athena or any of the Goldman Sachs parties requested Mr. Timban's removal following the receipt of this information[6].

In reality, however, Mr. Timban's disclosure was not entirely truthful or complete.  Rather, it now appears that the extent of his unauthorized practice of law in the State of New Jersey was not limited to the one, isolated incident which he disclosed.  Instead, it appears that he actually opened an office for the practice of law in Cherry Hill under the name of the "Timban Law Group, LLC" and that he actively practiced out of that office for nearly one year, if not longer.  (Moffitt Affidavit, Tab 21).  It further appears that Mr. Timban was actually indicted by a Grand Jury in Burlington County, New Jersey for unauthorized legal practice and that in April and July, 2012, the Attorney Discipline Board for the State of Michigan filed two complaints against him – the first arising out of his knowingly writing a check for which there were insufficient funds on behalf of a client in a probate matter in

---

[6] In fact, the Applicants make much of Athena's failure to object to Mr. Timban's continuing as an arbitrator following this disclosure, asserting that by this failure, it has waived any right to object to the confirmation of the award now.

Wayne County, Michigan and the second as the result of practicing law without a license in New Jersey. Mr. Timban pled no contest to these offenses and on November 12, 2012, was suspended from the practice of law in Michigan for a period of 176 days commencing on November 20, 2012. (Moffitt Affidavit, Tabs 22 - 26). Apparently, Mr. Timban failed to disclose any of this information to either FINRA or the parties involved in this action and it was only discovered after the arbitration hearings in this matter concluded and the award issued.[7]

We would be inclined to agree with the Applicants' argument that, by failing to object or request Mr. Timban's removal following the issuance of his updated disclosure in March, 2012, Respondents waived their right to now challenge the panel's award, were it not for the fact that it was so grossly misleading and incomplete. But the FINRA rules clearly entitled the Respondent to a panel composed of at least three qualified arbitrators (unless they agreed to proceed with two) and to have

---

[7] This Court finds it remarkable that **neither** of these parties **nor**, more particularly, **FINRA** saw fit to conduct any investigation or due diligence into Mr. Timban's qualifications after he revealed that he was the subject of a complaint by the State of New Jersey for unauthorized legal practice. Given that the parties were required by the terms of the subscription agreement to submit any disputes which arose thereunder to arbitration under the auspices of, inter alia, FINRA, and given that FINRA bills itself as the largest independent securities regulator in the country, one would expect that public confidence in the integrity of the arbitral process would be of paramount importance. Indeed, FINRA's June 21, 2013 announcement that it will now conduct annual background checks on its arbitrators and additional review before appointment seems, to this Court, to be an important step in the right direction, albeit "too little too late" in this case. (See, Deal Declaration, Tab 25).

18

those arbitrators answer truthfully the questions posed to them in the required disclosures checklists.  Indeed, it is only in reviewing those complete and honest answers that potential conflicts, bias and interests can be truly assessed and the integrity of the arbitral process ensured.  Again, courts properly enforce the bargains implicit in agreements to arbitrate by enforcing arbitration awards only in the absence of a reason to doubt the authority or integrity of the arbitral forum.  Sutter, supra.  Here, in failing to provide these parties with three qualified arbitrators, FINRA failed to provide what the parties agreed to in the Subscription Agreement.  We therefore conclude that vacatur of the award in this case is proper under Section 10(a)(3) and (4); that is, we find that the rights of Respondent were prejudiced by Mr. Timban's misbehavior and, as a consequence, the arbitrators here so imperfectly executed their powers that a mutual, final and definite award was not made.  For these reasons, we shall grant Respondent's motion to vacate and remand the arbitration award and deny Applicants' motion to confirm.

    An order follows.